WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Language Technologies Incorporated, | No. CV-23-00520-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| Microsoft Corporation, | |
| Defendant. | |

Pending before the Court is Defendant Microsoft Corporation's ("Microsoft") Motion to Dismiss Under Rule 12(b)(6). (Doc. 34.) This matter is fully briefed.[1] (Docs. 34, 37, 41.) For the reasons set forth below, the Court will deny the motion.

**I.   Background**

On November 15, 2023, Plaintiff Language Technologies, Inc. ("LTI") sued Microsoft for patent infringement.[2] (Doc. 1.) LTI alleges that Microsoft's Bling FIRE Tokenizer infringes on U.S. Patent No. 7,069,508 ('508 Patent) and U.S. Patent No.

---

[1] Plaintiff requested oral argument. (Doc. 37 at 1.) The Court, in its discretion, will deny the request for oral argument. Fed. R. Civ. P. 78(a); LRCiv 7.2(f); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."); *Bach v. Teton Cty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006) ("Due process does not require the district court to hold oral argument before ruling on pending motions.").

[2] The Court will cite to the First Amended Complaint because an amended complaint supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). The Complaint contains the same factual allegations referenced in this section. (*See* Doc. 1 at 14–17.)

7,346,489 ('489 Patent) (collectively "the Patents").[3] (Doc. 26 at 31–34.) LTI owns the Patents. (*Id.* at 6.)

On January 25, 2024, Microsoft moved to dismiss LTI's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 16.) Microsoft argued that the Patents and the Complaint failed to establish patent eligibility under 35 U.S.C. § 101 as interpreted by the Supreme Court in *Alice Corporation Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). (*Id.* at 1.)

The Court heard oral argument and agreed that, based on the allegations in the Complaint, the Patents (1) were directed to the abstract concept of using "key words" (unidentified in the Complaint) and punctuation to define and identify phrases in text and (2) did not disclose an additional inventive element. (Doc. 24 at 11–12.) The Court, therefore, granted Microsoft's Motion to Dismiss. (*Id.*) However, recognizing the possibility that additional factual allegations could remedy the deficiencies that led to dismissal, the Court granted leave to file an amended complaint detailing how the Patents disclosed either a non-abstract claim or an additional inventive element. (*Id.* at 12.)

## II.  First Amended Complaint

On April 26, 2024, LTI filed its First Amended Complaint. (Doc. 26.) It contains approximately 80 additional paragraphs of information specifying the way the Patents disclose a *specific* coordination of steps that instructs a computer to use a *specific* and *defined* library of key words and punctuation to identify phrases in a block of text and, in the case of the '508 Patent, to display the computerized text in the identified phrases to maximize readability for the user, thereby *improving* the technology and *solving* the problem of displaying text in phrases that were not as compatible with the way the human brain processes language. (*Id.* at 7–28.) The First Amended Complaint alleges that the Patents "are directed to methods that alter the operation of the devices themselves" and "improve their functionality." (*Id.* at 8.) These devices include closed-captioning systems, which at the time of the invention, presented digital text "without being grouped in a

---

[3] The Court hereby incorporates its detailed description of the Patents contained in its March 29, 2024 Order. (Doc. 24 at 2–3.)

manner which would assist their comprehension." (*Id.* at 14 (citing Doc. 26-1 at 10).) For example, the '508 Patent describes how, with then-existing technology, the end of one line of displayed text tended to be the beginning of a whole other phrase, breaking up the text in an unreadable manner. (Doc. 26-1 at 10.)

The First Amended Complaint further specifies that in the "library 25" of key words are "articles and function words" that indicate the likely beginning or end of a phrase where no punctuation exists. (Doc. 26 at 10–11.) The First Amended Complaint defines key words as "prepositions, pronouns, auxiliary verbs, conjunctions, grammatical articles or particles, all of which belong to the group of closed-class words." (*Id.* at 11.)

LTI specifically alleges that "[t]he claimed methods of phrase prediction do not automate or replicate the human brain's process of identifying phrases, which is a subjective endeavor. Instead, a computerized method (termed a 'Clauseau engine') predicts phrase boundaries using an objective process." (*Id.* at 8.) The First Amended Complaint claims that this specific method of phrase prediction has been "proven to achieve a technological improvement in the operation of devices that perform computerized text processing to display text." (*Id.* at 17.) This is exemplified in a product called ReadSmart. (*Id.*) ReadSmart is a "computerized text processing method that automates and applies phrased-based processing of text through software algorithms." (*Id.*) It adjusts "the spacing between words, the size of words, and line endings" to maximize readability and comprehension. (*Id.*) According to the First Amended Complaint, systems that use ReadSmart—and thereby the technology in the Patents—increased reading speed by 23%, reading comprehension by 24%, reading enjoyment by 38%, and persuasiveness by 39%. (*Id.*)

For these reasons, the First Amended Complaint alleges that the Patents are not directed to abstract material. It goes on to allege, however, that even if the subject matter of the Patents is abstract, the Patents include an inventive element. (*Id.* at 19.) That inventiveness lies in LTI's allegation that the Patents' method is a specific ordered combination of steps that were not well-understood, routine, or conventional at the time of invention. (*Id.*) Specifically, the steps of "(i) providing a library of key words and

punctuation definitions, (ii) using the key words and punctuation definitions to determine characteristics that predict phrase boundaries, and (iii) using the determined characteristics to predict phrase boundaries." (*Id.*) LTI highlights the Patents' prosecution history—and how the Patents were only approved after the examiner found that their specific ordered steps differed enough from the prior art for parsing phrases—to further underscore its inventiveness argument. (Doc. 37 at 17.)

### III. Motion to Dismiss First Amended Complaint

On May 24, 2024, Microsoft filed a renewed Motion to Dismiss. (Doc. 34.) Microsoft argues that the First Amended Complaint fails to state a claim because it contains "mere expansions of the same failed contentions LTI already raised." (*Id.* at 3.) Microsoft asserts that "LTI did not invent—and does not profess to have invented—key, function, or article words or punctuation, nor does LTI contend that it invented a new way of using them to identify phrases." (*Id.* at 2.) Microsoft highlights that patented claims directed to "(1) collecting data, (2) recognizing certain data within the collected data set, and (3) storing that recognized data in a memory" are too abstract for patent protection. (*Id.* at 9 (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014)).) Microsoft further argues that LTI cannot base patent eligibility on an allegation that the Patents improve a problem in the prior art because "LTI's patents nowhere identify *any* problem in prior-art phrase determination." (*Id.* at 14.)

In response, LTI argues that the First Amended Complaint contains "expansive allegations, which are firmly grounded in the patents, non-conclusory, and indisputably plausible . . . ." (Doc. 37 at 2.) LTI claims these allegations cure the deficiencies that previously led the Court to conclude that the Patents were abstract and non-inventive. (*Id.*) Therefore, LTI argues that, at a minimum, dismissal at this stage is not proper because the First Amended Complaint contains plausible allegations that the Patents are not abstract because the "claimed methods solve a problem in the technology of computerized text processing *by altering the physical display of text* so that phrases are presented as a group, thereby improving readability." (*Id.* at 2, 7–15.) Furthermore, LTI argues that the allegations in the First Amended Complaint establish plausible factual issues around

- 4 -

whether the Patents disclose an inventive element in the "specific, improved method for phrase prediction in a computerized text processing system . . . ." (*Id.* at 16.)

### IV. Relevant Law

#### a. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim" and allows a party to seek dismissal for failure to state a claim because either the complaint lacks a cognizable legal theory or lacks the factual allegations to support such a theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is only plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The law requires the complaint to contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly,* 550 U.S. at 555. This means that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A patent infringement claim is appropriate for dismissal due to patent ineligibility "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018); *Coop. Ent. Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). "A patent shall be presumed valid." 35 U.S.C. § 282(a). Therefore, "[t]he burden of establishing invalidity of a patent . . . shall rest on the party asserting such invalidity." *Id.* A party seeking to invalidate a granted patent "may overcome this presumption with 'clear and convincing evidence' proving [the patent does not satisfy 35 U.S.C. § 101]." *Datanet LLC v. Microsoft Corp.*, No. 2:22-cv-1545, 2023 WL 3947829, at *2 (W.D. Wash. June 12, 2023) (quoting *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011)).

"While not all allegations regarding inventiveness are sufficient to defeat a motion

to dismiss, such as those 'wholly divorced from the claims or the specification . . . plausible and specific factual allegations that aspects of the claims are inventive are sufficient.'" *Wanker v. United States*, 146 Fed. Cl. 582, 594 (2020) (quoting *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019)). "'[C]oncrete allegations in the . . . complaint that individual elements and the claimed combination are not well-understood, routine, or conventional activity' are sufficient to deny a motion to dismiss under § 101." *Id.* (quoting *Aatrix*, 882 F.3d at 1128).

### b. Patent Eligibility

Section 101 of the Patent Act describes patent eligible subject matter stating that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. A process means "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." *Id.* § 100(b). The Supreme Court has long identified three categories of material that cannot be patented: "'[l]aws of nature, natural phenomena, and abstract ideas . . . .'" *Alice*, 573 U.S. at 216 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). Because "[l]aws of nature, natural phenomena, and abstract ideas are 'the basic tools of scientific and technological work,'" it would impede innovation if patent law permitted parties to monopolize those tools and enforce that monopoly to the exclusion of the world. *Id.* (quoting *Myriad*, 569 U.S. at 589).

However, "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012). Thus, the Supreme Court has instructed courts to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 573 U.S. at 217. "[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id.* Rather, "an application of a law of nature . . . to a known structure or process may [deserve] patent protection." *Diamond v. Diehr*, 450 U.S. 175, 185 (1981) (alteration in original).

The Supreme Court has established a two-step framework to determine whether a patent falls into one of the three ineligible categories or whether it claims "patent-eligible applications of those concepts." *Id.* The first step of the framework requires courts to ask if the claims are directed to a law of nature, natural phenomena, or abstract idea. *Id.* "If so, we then ask, '[w]hat else is there in the claims before us?'" *Id.* (quoting *Mayo*, 566 U.S. at 78). In other words, step two of the framework "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" because they add a sufficient "inventive concept." *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 77–79).

### 1. Step One: Abstractness

"The 'abstract ideas' category embodies 'the longstanding rule that "[a]n idea of itself is not patentable."'" *Id.* at 218 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). This "exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113 (1853)). In other words, claims are patent eligible if they are directed to "the means or method that improves the relevant technology" but not if the claims "are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at 1314 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1048 (Fed. Cir. 2016)).

The Supreme Court, for example, has concluded that mathematical algorithms, including those implemented on a generic computer, are abstract. *See Gottschalk*, 409 U.S. at 71–72 (holding algorithm for converting numerals was abstract and unpatentable because it had no "substantial practical application except in connection with a digital computer," meaning that a patent on that formula would amount to "a patent on the algorithm itself"); *Parker v. Flook*, 437 U.S. 584, 594–95 (1978) (holding algorithm for calculating alarm limits abstract and unpatentable because it required only "purely conventional" computer implementation that was "well-known" in the art). *But c.f. Diehr*, 450 U.S. at 187, 192–93 (holding "an application of a . . . mathematical formula to a known

structure or process may well be deserving of patent protection" and finding patent eligible an algorithm for molding rubber because it was not simply a computer-implemented formula but an improvement upon "an industrial process").

Relatedly, the Federal Circuit has held that mere mental processes are abstract because "the application of only human intelligence to the solution of practical problems is no more than a claim to a fundamental principle." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) (citing *Benson*, 409 U.S. at 67; *Flook*, 437 U.S. at 586). Mental processes are methods that "can be performed in the human mind" or "by a human using a pen and paper." *Id.* at 1372–73. Accordingly, "collecting information, including when limited to particular content (which does not change its character as information)," and "analyzing information by steps people go through in their minds, or by mathematical algorithms, *without more*," is an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) (emphasis added) (collecting cases).

"In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting *Enfish*, 822 F.3d at 1335–36). In *McRO v. Bandai Namco Games America Incorporated*, for example, the Federal Circuit held that software for rendering 3-D animations was not abstract because it was not simply a mathematical formula but a set of computer-implemented rules that improved upon existing technology. 837 F.3d at 1314–15. The software "allow[ed] computers to produce 'accurate and realistic lip synchronization and facial expressions in animated characters' that previously could only be produced by human animators." *Id.* at 1313. Prior to the invention, animators made "subjective determinations rather than [using] specific, limited mathematical rules." *Id.* at 1314. The Federal Circuit reasoned that "[i]t [was] the incorporation of the claimed rules, not the use of the computer, that 'improved [the] existing technological process' by allowing the automation of further tasks." *Id.* (quoting *Alice Corp.*, 573 U.S. at 223). The

court distinguished this from *Flook* and other cases where the prior method was carried out in essentially the same way as the computer automated process. *Id.* The Federal Circuit has held "claims focused on various improvements of systems directed to patent eligible subject matter under § 101." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018). This can include "claims . . . directed to a *particular* manner of summarizing and presenting information in electronic devices." *Id.* (emphasis added).

### 2. Step Two: Inventive Concept

A claimed invention may still be eligible for patent protection although it is directed to an abstract idea if the claims offer an "inventive concept" that "transform[s] the abstract concept into a patent-eligible application." *Alice*, 573 U.S. 221. But it requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 566 U.S. at 72). For example, in *Mayo Collaborative Services v. Prometheus Laboratories, Incorporated*, the Supreme Court considered a method for measuring metabolites in blood to determine proper treatment dosage in patients. 566 U.S. at 71. After finding that the patent was directed to a natural law—i.e., the correlation between the level of metabolites in the bloodstream and proper dosage—the Court reasoned that the patent amounted to little more than instructing physicians to apply a well-known law, which did not constitute an inventive concept. *Id.*

Similarly, implementing an abstract algorithm using generic and existing computer technology, without more, is not an inventive application of an abstract idea. *See Benson*, 409 U.S. at 64; *Flook*, 437 U.S. at 594. Indeed, "*Flook* stands for the proposition that the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 573 U.S. at 222–23 (quoting *Bilski*, 561 U.S. at 610–11). In contrast, the patent in *Diehr* was sufficiently inventive because it employed a well-known algorithm but in combination with additional steps within a larger industrial process and improved upon that process. 450 U.S. at 178–79.

### V.    Discussion

The Court finds that the First Amended Complaint states a claim for patent

- 9 -

infringement by sufficiently pleading that the Patents are not abstract. At a minimum, LTI has pled detailed allegations that, taken as true, now prevent the Court from resolving the patent eligibility question on dismissal. Specifically, the First Amended Complaint focuses on detailing the allegations that the Patents *improved upon existing technology* for parsing and displaying digital text. This is distinct from merely claiming a mental process and discussing implementing it using a computer. *See, e.g.*, *Finjan, Inc.*, 879 F.3d at 1303 (quoting *Enfish*, 822 F.3d at 1335–36). The First Amended Complaint outlines the problems with then-existing technology and specifies how the Patents solved these problems. These allegations are plausible because they are not "wholly divorced" from the Patents. *Wanker*, 146 Fed. Cl. at 594 (quoting *Cellspin*, 927 F.3d at 1317).

Furthermore, the First Amended Complaint, citing the Patents, defines "key words" for the Court and explains how using these words is not merely using well-defined grammar rules to parse text. Although the Patents did not invent new words or new rules of grammar, the First Amended Complaint sufficiently alleges that the Patents disclose an inventive manner of using these rules to alter the operation of the devices that display text, improve their functionality, and solve a problem in the technology to increase the readability of digital text.

Because the First Amended Complaint plausibly alleges facts that, taken as true, show the Patents are not directed to abstract subject matter, the Court need not assess whether they also disclose an inventive concept at this stage.

**VI.   Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Defendant Microsoft's Motion to Dismiss the First Amended Complaint is **DENIED**. (Doc. 34.)

Dated this 31st day of March, 2025.

_____
Honorable Raner C. Collins
Senior United States District Judge